UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHEW KING TAN, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>v.<br><br>GOLDMAN SACHS GROUP INC. and MORGAN STANLEY,<br><br>      Defendants.<br><br>THIS DOCUMENT RELATES TO:<br><br>  1:21-cv-08618-PAC<br>  1:21-cv-08752-PAC<br>  1:21-cv-08897-PAC<br>  1:21-cv-10286-PAC<br>  1:21-cv-10791-PAC<br>  1:22-cv-00169-PAC | **OPINION & ORDER**<br><br>Case No. 1:21-cv-08413-PAC |

Having ruled last month that the above-captioned actions (the "Coordinated Actions") are to be closely coordinated, but not fully consolidated, the Court is now tasked with appointing lead plaintiff(s) and lead counsel in each individual action.

In its prior order (the "Coordination Order," *see* ECF No. 42)[1], the Court ordered all prospective leads to submit papers in support of their candidacy by March 30, 2022. The Court has received timely unopposed motions in six of the seven Coordinated Actions, along with two dueling, timely motions in Case No. 21-cv-08752 (the "Tencent Action").[2] Seven motions—including the

---

[1] Unless otherwise indicated, all docket citations are to Case No. 21-cv-8413.

[2] The Court had already received a number of submissions prior to the Coordination Order, but because several issues integral to appointing leads had not yet been briefed—including, as the Court explained in the Coordination Order, movants' ability "to cooperate productively and efficiently with

1

six unopposed motions, and one of the two motions in the Tencent Action—are filed on behalf of the same consortium of plaintiffs (the "Plaintiffs Group"), a group that includes the movants claiming the largest loss in six of the seven Coordinated Actions, and the movant claiming the second largest loss in the Tencent Action. These motions propose a unified, detailed, consensus structure to govern all of the Coordinated Actions. The sole opposing motion is filed on behalf of the movant claiming the largest loss in the Tencent Action, Michael Krueger.

For the reasons set forth below, the Court **GRANTS** the Plaintiffs Group's motions, as modified at the end of this Order, and **DENIES** the Krueger motion.

## DISCUSSION

The Court assumes familiarity with the general backdrop of this still-nascent litigation, as articulated in the Coordination Order.

### A. Legal Standards

#### i. Lead Plaintiff

The Private Securities Litigation Reform Act ("PSLRA") directs courts to appoint as lead plaintiff the movant "the Court determines to be most capable of adequately representing the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(i). Under the PSLRA, courts are to presume that the most adequate plaintiff is the party that: (1) either filed the complaint or made a timely motion to be appointed lead;[3] (2) "has the largest financial interest in the relief sought by the class"; and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be a rebutted only upon a showing that

---

the other class leads," and a proposed leadership structure across the Coordinated Actions—the Court informed the parties that it would not consider any motions to be appointed lead filed prior to the Coordination Order. (*See* Coordination Order at 6–7.) Many movants have subsequently withdrawn their motions.

[3] It is undisputed that all movants satisfy this requirement.

the presumptively most adequate plaintiff (1) "will not fairly and adequately protect the interests of the class"; or (2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

With respect to the largest financial interest, courts in this District look to the so-called "Lax/Olsten" factors: (1) the number of shares purchased; (2) the number of net shares purchased; (3) total net funds expended during the class period; and (4) the approximate losses suffered. *See, e.g.*, *Tate v. Aterian, Inc.*, No. 21-cv-4323 (VM), 2021 WL 3538144, at *2 (S.D.N.Y. Aug. 10, 2021). "The magnitude of the loss is the most significant factor." *Plaut v. Goldman Sachs Grp., Inc.*, No. 18-cv-12084 (VSB), 2019 WL 4512774, at *2 (S.D.N.Y. Sept. 19, 2019).

With respect to Rule 23, "although numerosity and common questions of law and fact are relevant requirements for a class representative under Rule 23, typicality and adequacy of representation are the only provisions of Rule 23 relevant to a *determination of lead plaintiff* under the PSLRA." *Tate*, 2021 WL 3538144, at *2 (cleaned up) (emphasis added); *see Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 412 (S.D.N.Y. 2004) ("[Only] typicality and adequacy ... directly address the personal characteristics of the class representative."). Consequently, a prospective lead need only make a "preliminary showing" as to typicality and adequacy, and need not make any showing at all as to numerosity or commonality.[4] *See Denny v. Canaan, Inc.*, No. 21-cv-3299 (JPC), 2021 WL 5847647, at *2 (S.D.N.Y. Dec. 9, 2021); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 536 (S.D.N.Y. 2015) ("[A] wide

---

[4] It is undisputed that all movants satisfy Rule 23's typicality requirement, which requires that a prospective lead's claims "arise from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Pirelli Armstrong*, 229 F.R.D. at 412. Rule 23 adequacy—which is satisfied where a prospective lead "(1) has no conflict of interest with the other members of the class; (2) has sufficient interest in the outcome of the case; and (3) has selected counsel that is qualified, experienced, and generally able to conduct the litigation in question"—is disputed only as to Krueger, which the Court addresses *infra* pp. 6–8. *Micholle v. Ophthotech Corp.*, No. 17-cv-1758 (VSB), 2018 WL 1307285, at *6 (S.D.N.Y. Mar. 13, 2018).

3

ranging analysis under Rule 23 is not appropriate at this initial stage of the litigation and should be left for consideration of a motion for class certification.") (cleaned up).

*ii. Lead Counsel*

Under the PSLRA, lead plaintiffs "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "Although the Court maintains discretion in appointing lead counsel to protect the interests of the class, the PSLRA evidences a strong presumption in favor of appointing a properly-selected lead plaintiff's decision as to counsel selection and counsel retention." *Bishins v. CleanSpark, Inc.*, No. 21-cv-511 (LAP), 2021 WL 5741574, at *4 (S.D.N.Y. Dec. 2, 2021) (cleaned up). Co-lead counsel may be appointed "provided that there is no duplication" of attorneys' services, fees, or expenses. *Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 404 (S.D.N.Y. 2004).

**B. Application**

*i. 21-cv-08413 (Vipshop); 21-cv-08613 (Gaotu); 21-cv-08897 (ViacomCBS); 21-cv-10999 (iQIYI); 21-cv-10791 (Baidu)*

The Court finds that the Plaintiffs Group movants in each of these cases are the most adequate to represent the interests of each respective issuer-class. Each movant has (1) timely submitted their (unopposed) motion to be appointed lead, (2) alleging the largest loss within each respective issuer-class, and (3) presenting an unrebutted *prima facie* showing as to typicality and adequacy. Thus, under the PSLRA, each qualifies as the presumptive lead plaintiff for each respective issuer-class, and that presumption has not been disrupted. Moreover, all have demonstrated themselves to be willing and capable collaborators across the issuer-classes—a crucial showing in these closely-coordinated cases.

The Court also approves each of these movants' choice of lead counsel. In each case, prospective lead counsel has been shown to be competent, cooperative with other counsel in this case, and otherwise qualified to serve as lead counsel within the Executive Committee framework

4

outlined by the Plaintiffs Group.[5]

The Court thus grants each of the motions to appoint leads in the following cases, as detailed at the end of this Order: 21-cv-08413 (Vipshop); 21-cv-08613 (Gaotu); 21-cv-10999 (iQIYI); 21-cv-10791 (Baidu).

    *ii.*   *22-cv-00169 (Discovery); 21-cv-08897 (ViacomCBS)*

The Court reaches the same conclusions with respect to the unopposed motions in the Discovery and ViacomCBS Actions. These motions, however, differ from the motions discussed above in one respect: they seek the appointment of *co*-lead plaintiffs.[6]

The PSLRA allows for either a "person" or a "group of persons" to be appointed lead. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Courts in this district have examined a variety of factors to determine whether to appoint co-lead plaintiffs. These have included: the size of the proposed group; the relationship (including the existence of a pre-litigation relationship) between group members; evidence that the group was formed in bad faith; group members' involvement in the litigation thus far; plans for cooperation; the sophistication of group members; and "whether the members chose outside counsel, and not vice versa." *See Khunt*, 102 F. Supp. 3d at 533; *Garnett v. RLX Tech. Inc.*, No. 21-cv-5125 (PAE), 2021 WL 3913541, at *5 (S.D.N.Y. Aug. 31, 2021).

Although, in this case, these many indicators do not speak as one, the Court finds that the balance of these factors weighs in favor of appointing co-lead plaintiffs. Paramount to this finding

---

[5] In Case No. 21-cv-08613 (Gaotu), the Court grants the request to appoint as co-lead counsel Berger Montague and Rosca & Scarlato LLC. Because there has been no indication of the "duplication of attorneys' services" or "increase[d] attorneys' fees and expenses," *Sofran*, 220 F.R.D. 398, 404, the Court concludes that the strong presumption that a lead plaintiff's otherwise-qualified choice for lead counsel should be approved has not been overcome.

[6] In Case No. 22-cv-00169 (Discovery), the Court grants the request to appoint as co-lead counsel Grant & Eisenhofer P.A. and Scott+Scott Attorneys at Law LLP. Once again, because there has been no indication of the "duplication of attorneys' services" or "increase[d] attorneys' fees and expenses," *Sofran*, 220 F.R.D. 398, 404, the Court concludes that the strong presumption that a lead plaintiff's otherwise-qualified choice for lead counsel should be approved has not been overcome.

is the cooperative vision at the heart of the Plaintiffs Group's proposal. Given the exceptional overlap between the Coordinated Actions, and the likelihood that common questions of fact and law will tether the fates of all seven dockets together, this cooperation has been, and will continue to be, essential to protecting the interests of each issuer-class. Moreover, the proposed co-lead plaintiff groups are relatively small—only two members in the ViacomCBS Action, and only three in the Discovery Action—and their members are sufficiently sophisticated to understand the implications of banding together. Finally, although these coalitions do appear to have been formed for purposes of litigation, there is no evidence of bad faith.

The Court thus grants each of the unopposed motions to appoint leads in the following cases: 22-cv-00169 (Discovery); 21-cv-08897 (ViacomCBS).

    *iii.*   *21-cv-08752 (Tencent)*

The Court turns last to the only action in which competing motions to be appointed lead plaintiff remain. Of the two remaining movants, it is undisputed that Michael Krueger has presented a greater financial interest in the action: an alleged loss of $163,233.53, just under double the loss alleged by the other remaining movant, Zhang Zhenming.

Nonetheless, in the exceptional context of these seven nearly-identical actions, Krueger has shown himself to be inadequate to lead the Tencent Class. In considering a proposed lead plaintiff's Rule 23 adequacy, courts look to whether the movant: "(1) has no conflict of interest with the other members of the class; (2) has sufficient interest in the outcome of the case; and (3) has selected counsel that is qualified, experienced, and generally able to conduct the litigation in question. *Micholle v. Ophthotech Corp.*, No. 17-cv-1758 (VSB), 2018 WL 1307285, at *6 (S.D.N.Y. Mar. 13, 2018); *see In re Grupo Televisa Sec. Litig.*, No. 18-cv-1979 (LLS), 2021 WL 2000005, at *2 (S.D.N.Y. May 19, 2021) (an adequate lead plaintiff may "not have interests that are antagonistic to the class that he seeks to represent") (internal quotations omitted).

6

Although Krueger's significant alleged loss undoubtedly satisfies the second factor, his (and his counsel's) adversarial posture with respect to the other plaintiffs raises significant questions as to the first and third factors. As the Court has made clear, meaningful cooperation among the various lead plaintiffs will be essential to protecting the interests of each issuer-class. Krueger purports to agree with this sentiment in principle, but disputes that the Plaintiffs Group's proposed leadership structure is the best way to accomplish it. But despite Krueger's contention that the Plaintiffs Group's proposed leadership structure smacks of the very lawyer-driven litigation the PSLRA was enacted to curtail, the Court is persuaded that it in fact "evinces both an appreciation for the complexity of the [Coordinated Actions] and an ability to work cooperatively to create a decisionmaking framework" among the various lead plaintiffs and their counsel.[7] *Deangelis v. Corzine*, 286 F.R.D. 220, 225 (S.D.N.Y. 2012) (according "significant weight to the Consensus Plaintiffs' willingness to cooperatively develop a leadership structure").

This is not a cosmetic concern. Meaningful cooperation will serve to protect the interests of all the issuer-classes, including the Tencent Class, by, *inter alia*, forestalling duplicative and unnecessary legal costs that could nibble away at each issuer-class's prospective recovery, quelling uncertainty and infighting that could delay each issuer-class's prospective recovery, and otherwise permitting the Coordinated Actions to proceed to the merits as justly and efficiently as possible. Accordingly, Krueger's intransigence renders him inadequate under Rule 23.

Moreover, even setting Rule 23 aside, the Court finds that these same concerns suggest that Krueger "will not fairly and adequately protect the interests of the class"—which, for the reasons

---

[7] The Court understands that there is some inherent tension between, on the one hand, centralized efficiency across issuer-classes and, on the other hand, self-determination for each lead plaintiff within each issuer-class. Accordingly, as set forth at the end of this Order, should any lead plaintiff believe adjustment to be necessary, the Court will entertain motions to alter the leadership structure. This option, along with the necessary Court approval for any settlement, should ensure that the interests of the individual issuer-classes do not fall prey to bare efficiency concerns.

stated, are inextricably linked to inter-class cooperation—effectively rebutting his status as presumptive lead under the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The Court therefore denies Krueger's motion to be appointed lead plaintiff.

By contrast, because Zhenming has timely presented an unrebutted[8] *prima facie* showing as to typicality and adequacy, and established the largest financial interest among *adequate* Tencent movants, the Court grants his motion to be appointed lead plaintiff. So too does it approve his choice of Pomerantz LLP, which has been shown to be competent, cooperative, and otherwise qualified to serve as lead counsel.

---

[8] To the extent Krueger suggests in passing that Zhenming's mere assent to the Plaintiffs' Group proposed leadership structure renders him inadequate, the argument is presented without any support and is, in any event, meritless. (*See* Krueger Oppo. at 9, ECF No. 49, Case No. 21-cv-8752.)

## CONCLUSION

Thus, the Court hereby orders the following:

### I. LEAD PLAINTIFFS AND LEAD COUNSEL OF THE VARIOUS ISSUER CASES

1. The Court orders the following appointments pursuant to the PSLRA:

| Docket Number | Lead Plaintiff(s) | Lead Counsel(s) |
|---|---|---|
| 21-cv-08413 (Vipshop) | Alexander Shapovalov | Johnson Fistel LLP |
| 21-cv-08613 (Gaotu) | Syed Zaheer | Berger Montague and Rosca & Scarlato LLC |
| 21-cv-08752 (Tencent) | Zhang Zhenming | Pomerantz LLP |
| 21-cv-08897 (ViacomCBS) | The Kellner Newcomer Family Partnership & Felix Urman | Pomerantz LLP |
| 21-cv-10999 (iQIYI) | Yan Cai Jiang | Scott+Scott Attorneys at Law LLP |
| 21-cv-10791 (Baidu) | Dr. Jeffrey Wachtel | Hedin Hall LLP |
| 22-cv-00169 (Discovery) | Oklahoma Firefighters Pension and Retirement System, Oklahoma Law Enforcement Retirement System & Jamal Pesaran | Grant & Eisenhofer P.A. and Scott+Scott Attorneys at Law LLP |

### II. PLAINTIFFS' EXECUTIVE COMMITTEE

2. The Plaintiffs Group's designation of a Plaintiffs' Executive Committee comprised of Scott+Scott Attorneys at Law LLP, Hedin Hall LLP, Pomerantz LLP, Johnson Fistel LLP, Berger Montague PC, Grant Eisenhofer P.A., and The Schall Law Firm is approved;

3. The Plaintiffs Group's designation of Thomas L. Laughlin, IV of Scott+Scott Attorneys at Law LLP and David W. Hall of Hedin Hall LLP as Co-Chairs of the Executive Committee and "Coordinating Counsel" is approved;

4. The Plaintiffs Group's proposed structure and organization for prosecuting these cases, which was submitted as Exhibit 1 to the Declaration of Thomas L. Laughlin, IV, in support of the Motion (*see* ECF No. 45-1) is approved.

5. Should any Lead Plaintiff determine that this leadership structure requires amendment to ensure, *inter alia*, that control of the Coordinated Actions remains in the hands of Lead Plaintiffs,

9

not their counsel, such requests may be submitted in letter motions to the Court.

## III. FURTHER PROCEEDINGS

6. Lead Plaintiffs shall file their amended complaints in each of the Coordinated Actions within sixty (60) days from the date of this Order. While Lead Plaintiffs should take care to coordinate the preparation of these amended pleadings so as to preserve uniformity wherever appropriate, each action's amended complaint should be tailored to that specific action.

7. Coordinating Counsel and counsel for Defendants will submit a proposed schedule for omnibus motion to dismiss briefing within seven (7) days of this Order. The submission should address to what extent, if any, the parties anticipate their arguments for or against the motions to dismiss to vary based on the specific issuer or action. The Court expects to resolve the motions to dismiss in a single opinion.

Dated: New York, New York
April 12, 2022

SO ORDERED

*Paul A. Crotty*

HONORABLE PAUL A. CROTTY
United States District Judge